LEAR SIEGLER, INCORPORATED, a Delaware corporation, Plaintiff,

v.

INTERNATIONAL UNION, UNITED AUTOMOBILE, AEROSPACE AND AGRICULTURAL IMPLEMENT WORKERS OF AMERICA (UAW), and its Local No. 330, Defendants.

Civ. A. No. 5891.

United States District Court
W. D. Michigan, S. D.
July 11, 1968.

Miller, Johnson, Snell & Cummiskey, Grand Rapids, Mich., John W. Cummiskey, Grand Rapids, Mich., of counsel, for plaintiff.

Morse & Kleiner, Grand Rapids, Mich., A. Robert Kleiner, Grand Rapids, Mich., of counsel, for defendants.

## OPINION

FOX, District Judge.

This action arises out of a labor dispute between defendant union and plaintiff, Lear Siegler, Incorporated. Plaintiff seeks a declaratory judgment under Title 28 U.S.C. §§ 2201, 2202, and under § 301 of the Labor Management Relations Act, as amended, Title 29 U.S.C. § 185. Plaintiff further seeks a temporary injunction against certain union conduct and seeks damages under § 303

of the Labor Management Relations Act, Title 29 U.S.C. § 187.

The basic facts are not disputed. This action is before the court following cross-motions for summary judgment by the parties. The parties are in agreement that the well pleaded facts in plaintiff's complaint are true for the purposes of these motions.

Jurisdiction of this court is founded on § 301(a) of the Labor Management Relations Act, as amended, Title 29 U.S.C. § 185(a). The subject matter of the complaint concerns the breach of an alleged agreement between plaintiff and defendants, and certain actions of defendants which are claimed to be in conflict with the duties and obligations imposed on the parties by the Labor Management Relations Act.

Defendant is the duly authorized collective bargaining agent for plaintiff's employees at its Instrument Division Plant in Wyoming, Michigan. Defendant union has continuously represented all of plaintiff's production and maintenance employees in a single bargaining unit since 1950, pursuant to certification by the National Labor Relations Board. Over this period of nearly eighteen years the union and plaintiff have entered into five consecutive bargaining agreements. The most recent such agreement expired by its terms on February 1, 1968.

On or about April 1, 1968, the union called a strike of all production and maintenance employees in the single bargaining unit. That strike has continued in effect to this date. Prior to and subsequent to the expiration of the contract on February 1, 1968, plaintiff and union have engaged in negotiations for a new agreement.

On or about June 3, 1968, in the course of such negotiations, plaintiff and the union's bargaining committee reached a tentative agreement on the terms and conditions of a new collective bargaining agreement between them. Subsequent thereto, the union held a ratification vote.

In accordance with procedures authorized by the constitution of the International Union, the defendant conducted this ratification vote so that approximately 200 skilled workers voted separately from the remainder of the approximately 2,000 production workers. Whereas a majority of the production workers voted to ratify the proposed agreement, the skilled workers voted to reject the contract. Following this vote, the union informed plaintiff that the contract had not been ratified.

Plaintiff's basic contentions are that this separate ratification procedure used by the union amounts to a de facto and illegal severance of the skilled workers from the authorized bargaining agent. Plaintiff contends that the union's activities in this case constitute a secondary boycott in violation of §§ 8(b) (4) (i) (C) of the Labor Management Relations Act, Title 29 U.S.C. § 158(b) (4). Plaintiff asks this court to declare these separate ratification procedures illegal, and that the court issue a temporary injunction restraining defendants from conducting any further separate ratification vote. Plaintiff also seeks a judgment declaring that there is at present a valid contract between plaintiff and the union, as representative of its employees on the basis of the ratification vote of June 19, 1968, by which a majority of the union members voted in favor of ratification. This would have the effect of declaring that the strike currently being conducted by defendant union is an illegal strike by virtue of the no-strike clause within that contract.

Defendant contends that ratification is an internal union affair, the procedure for which the union should decide. Defendant further contends that this court lacks jurisdiction over this matter because primary jurisdiction of labor disputes rests in the National Labor Relations Board. Defendant also asserts that the Norris-LaGuardia Act prohibits this court from issuing a preliminary injunction as requested by plaintiff.

Defendant seeks dismissal of this action, or in the alternative, a summary

judgment. It is the union's contention that this action is really a tactical maneuver employed by plaintiff as a means to break the strike and divide the union.

In these motions for summary judgment, the basic issue before the court is whether or not an agreement exists between plaintiff and defendant.

 Section 301 of the Labor Management Relations Act gives district courts jurisdiction to hear disputes involving labor contracts. Avco Corp. v. Aero Lodge 735, IAM, 390 U.S. 557, 88 S.Ct. 1235, 20 L.Ed.2d 126 (decided April 8, 1968).[1] The invocation of this statute, however, presupposes the exist-

ence of a valid contract between the parties. Neither party would dispute that this court has jurisdiction to determine whether or not there is a contract.

In order to resolve the basic question of the existence of a contract, this court must decide whether separate ratification procedures approved by the International Union and adopted by the Local are as a matter of law illegal, and whether by virtue of a vote at which a majority of the production workers approved a tentative agreement between the company and the authorized bargaining agent, that contract is ratified and valid.

[1]. This was a suit filed in a state court to enjoin a union from striking at petitioner's plant. The Supreme Court held that it was removable to the federal courts, notwithstanding the fact that the Norris-LaGuardia Act may limit the relief that was available. Quoting from Textile Workers Union of America v. Lincoln Mills of Alabama, 353 U.S. 448, 77 S.Ct. 912, 1 L.Ed.2d 972 (1957), the Court said:

"We conclude that the substantive law to apply in suits under § 301(a) is federal law, which the courts must fashion from the policy of our national labor laws. * * * The Labor Management Relations Act expressly furnishes some substantive law. It points out what the parties may or may not do in certain situations. Other problems will lie in the penumbra of express statutory mandates. Some will lack express statutory sanction but will be solved by looking at the policy of the legislation and fashioning a remedy that will effectuate that policy. The range of judicial investiveness will be determined by the nature of the problem. * * * Federal interpretation of the federal law will govern, not state law. * * * But state law, if compatible with the purpose of § 301, may be resorted to in order to find the rule that will best effectuate the federal policy. * * * Any state law applied, however, will be absorbed as federal law and will not be an independent source of private rights." 353 U.S. at 456–457, 77 S.Ct. at 918, 1 L.Ed.2d at 980, 981.

The Court went on to say:

* * * The nature of the relief available after jurisdiction attaches is,

of course, different from the question whether there is jurisdiction to adjudicate the controversy. The relief in § 301 cases varies—from specific performance of the promise to arbitrate (Textile Workers Union v. Lincoln Mills, supra), to enforcement or annulment af an arbitration award (United Steel Workers of America v. Enterprise Wheel & Car Corp., 363 U.S. 593, 80 S.Ct. 1358, 4 L.Ed.2d 1424, to an award of compensatory damages (Atkinson v. Sinclair Refining Co., 370 U.S. 238, 82 S.Ct. 1318, 8 L.Ed.2d 462, and the like. See Smith v. Evening News Ass'n., 371 U.S. 195, 199–200, 83 S.Ct. 267, 269–270, 9 L.Ed.2d 246, [250, 251]. But the breadth or narrowness of the relief which may be granted under federal law in § 301 cases is a distinct question from whether the court has jurisdiction over the parties and the subject matter. Any error in granting or designing relief "does not go to the jurisdiction of the court." Swift & Co. v. United States, 276 U.S. 311, 331, 48 S.Ct. 311, 316, 72 L.Ed. 587, [599]. Cf. Zwickler v. Koota, 389 U.S. 241, 254–255, 88 S.Ct. 391, 399, 19 L.Ed. 2d 444, [455, 456]. When the Court in Sinclair Refining Co. v. Atkinson, supra, 370 U.S. at 215, 82 S.Ct. [1328], at 1339, [8 L.Ed.2d at 453], said that dismissal of a count in the complaint asking for an injunction was correct "for lack of jurisdiction under the Norris-LaGuardia Act," it meant only that the Federal District Court lacked the general equity power to grant the particular relief.

■ At the outset, we must reject plaintiff's contention that the union's separate ratification procedure amounts to an illegal severance of the skilled tradesmen from the authorized bargaining unit and the formation of an unauthorized bargaining unit. Relevant to this question is the decision by the National Labor Relations Board on March 26, 1968, Lear Siegler, Incorporated and International Society of Skilled Trades, 170 NLRB No. 114, wherein petitions filed by the International Society of Skilled Trades for severance of nine skilled trade groups of the Lear Siegler plant from the UAW single bargaining unit, defendant in this case, were rejected.

Plaintiff contends that skilled workers in this case by use of separate ratification procedure are attempting to accomplish the severance from the single bargaining unit which was denied by the National Labor Relations Board in that case. The decision of the National Labor Relations Board in that case rested upon their finding that the skilled workers were adequately represented and that their severance into spearate bargaining units was not required.

The court has noted three decisions by the Regional Director of the National Labor Relations Board for the Seventh Region, dated August 1, 1967, which similarly dismissed petitions by the International Society of Skilled Trades for severance of skilled tradesmen from the UAW in the Big Three automobile corporations.[2] In each of those three decisions the Regional Director noted the provision of the UAW constitution which provided for separate ratification procedures and took this as evidence of the fact that the skilled tradesmen were being adequately represented within the present framework of the UAW.

The Regional Director also noted:

"The master contract with the Employer includes a skilled trades supplemental agreement. Evidence submitted by the UAW demonstrates beyond question that the skilled trades members participate fully in administration of the UAW, both on the local and national level." [3]

■ Plaintiff's contention that the adoption of separate ratification procedures serves only the self-interest of the UAW is without merit, for it is clear that the purpose of the ratification procedure is to carry out the union's duty to adequately and fairly represent all employees within the bargaining unit.

In answer to plaintiff's complaint, defendant contends that the ratification of a proposed contract is a matter entirely within the purview of the designated collective bargaining agent, in this case, the International Union and its Local. They further claim that the company has no right to dictate to the union the means by which it shall be determined when and whether a contract has been ratified. For this proposition, the union cites NLRB v. Wooster Division of Borg-Warner Corp., 356 U.S. 342, 78 S. Ct. 718, 2 L.Ed.2d 823 (1958).

In that case the Supreme Court held that it was an unfair labor practice for a company to insist on the inclusion in a contract of a "ballot" clause which called for a pre-strike secret vote by all employees before the union was authorized to call a strike. The court held that the clause was not a mandatory subject of bargaining and therefore it was unlawful for the company to insist upon it as

2. Decision of the Regional Director, NLRB, Seventh Region:
 General Motors Corp. and International Society of Skilled Trades, Cases No. 7–RC–8127 through 7–RC–8164; and 7–RC–8197 through 7–RC–8205.
 Ford Motor Company and International Society of Skilled Trades, Cases No. 7–RC–8167 through 7–RC–8184;

7–RC–8206, 7–RC–8207, and 7–RC–8208.
 Chrysler Corp. and International Society of Skilled Trades, Cases No. 7–RC–8185 through 7–RC–8195; 7–RC–8209, 7–RC–8210, and 7–RC–8211.

3. Id., p. 5.

a condition of agreement. The Court stated:

"The 'ballot' clause * * * deals only with relations between the employees and their unions. *It substantially modifies the collective-bargaining system provided for in the statute by weakening the independence of the representative chosen by the employees.* It enables the employer, in effect, to deal with its employees rather than with their statutory representative." 356 U.S. at 350, 78 S.Ct. at 723. (Emphasis supplied.)

■ While the Borg-Warner case does not reach the essential question in the case at bar, it does stand for the proposition that an employer has no right to insist that all union decisions be made by democratic vote.

■ In joining a labor union, the members thereof agree to be bound by the constitution and bylaws of that union. Cleveland Orchestra Committee v. Cleveland Federation of Musicians, etc., 303 F.2d 229 (6th Cir., 1962). That case held that symphony musicians who were not allowed to vote upon acceptance of a collective bargaining agreement negotiated by the union were not discriminated against in violation of the Labor Management Reporting and Disclosure Act of 1959, § 101(a) (1), 29 U.S.C. § 411(a) (1).

■ That section provides that "every member of a labor organization shall have equal rights and privileges within such organization to nominate candidates, to vote in elections or referendums of the labor organization, to attend membership meetings, and to participate in the deliberations and voting upon business of such meeting, subject to reasonable rules and regulations in such organization's constitution and bylaws." Section 411 does not give union members the right to vote on every union decision, for its specifically provides that the rights and privileges of the union members shall be subject to reasonable rules and regulations of the union.

■ In this case the local has adopted the separate ratification procedures authorized by the International Union; therefore, all members of the local are bound by those procedures. If change is to come, it must come from within the union.

■ Plaintiff has asked this court to extend the Supreme Court doctrine of "one-man one-vote" to the ratification of collective bargaining agreements. The "one-man one-vote" rule is applicable only to the election of political representatives. The vote in this case was not one to select representatives. Representation was provided in earlier elections in which delegates to the union's convention and local union officials were selected by the members of the union.

These properly elected delegates and officials thereafter adopted the separate ratification procedure which was in effect at the time of the vote on June 19, 1968. Union members are bound by the constitution and bylaws of the union, and by the lawful decisions of their representatives, just as citizens of a state are bound by the laws of the legislature. Obviously the "one-man one-vote" rule does not give citizens the right to a democratic vote on each action taken by their elected officials. Similarly, that rule will not be extended to every action taken by labor unions.

■ The company in this case has no standing to complain of the regulations and procedures adopted by the union for the conduct of its internal affairs. To allow the company to raise objections concerning the internal policies of a union would seriously weaken the collective bargaining unit. Such weakening of the authorized bargaining agent is in contravention of the established federal labor policy. Collective bargaining can only be effective if the authorized bargaining agent has the power and authority to deal directly with the employer in the name of the represented employees.

■ Plaintiff has made much of the long history of the relationship between

the company and this union. Plaintiff seems to imply that because of this long history of single ratification procedures used by the union prior to this contract, the union is estopped from adopting a different policy. Nothing prevents the union from adopting new procedures which it believes to be necessary in order to more adequately carry out its duty to fairly represent all employees. The long history of this relationship does not prevent the UAW from taking action which is required to meet the problems of equity involved with its skilled trades members.

 This court has noted its jurisdiction to determine if there is a contract in this case. It is the finding of this court that there is no contract. This finding is determinative of all of plaintiff's claims. Since there has been no illegal severance, there is no secondary boycott in violation of § 8(b) (4) of the Labor Management Relations Act. Nor is plaintiff entitled to recover on its request for damages and temporary injunctive relief.

Defendant's motion for summary judgment is granted. Plaintiff's motion for summary judgment is denied.