HRIBAR TRUCKING, INC., Plaintiff,

v.

TEAMSTERS, CHAUFFEURS & HELP-
ERS LOCAL NO. 43, et al.,
Defendants.

Civ. A. No. 74–C–339.

United States District Court,
E. D. Wisconsin.

Sept. 5, 1974.

**994**

Fred W. Wheeler, Racine, Wis., for plaintiff.

Walter F. Kelly, Milwaukee, Wis., for defendants.

## OPINION AND ORDER

REYNOLDS, Chief Judge.

This matter is before the court on plaintiff's motion for a temporary restraining order. Following a hearing held on August 22, 1974, plaintiff's motion was taken under advisement by the court. After a careful review of the evidence, arguments of counsel, and the various documents submitted to the court by the parties, this court concludes that plaintiff has failed to demonstrate the requisite probability of success on the merits entitling it to a temporary restraining order, and, consequently, plaintiff's motion must be denied.

Plaintiff Hribar Trucking requests that this court restrain a current labor strike of its employees alleging that the strike is in violation of a no-strike clause contained in a collective bargaining agreement allegedly entered by the parties on June 28, 1974. Plaintiff contends that it is entitled to an injunction under the doctrine of Boys Market, Inc. v. Retail Clerks, Local 770, 398 U.S. 235, 90 S.Ct. 1583, 26 L.Ed.2d 199 (1970), notwithstanding the general proscription against such injunctions found in Section 4 of the Norris-LaGuardia Act, 29 U.S.C. § 104.

In *Boys Market*, supra, the United States Supreme Court, overruling Sinclair Refining Co. v. Atkinson, 370 U.S. 195, 82 S.Ct. 1328, 8 L.Ed.2d 440 (1962), carved out a narrow exception to the proscription of Norris-LaGuardia and held that a district court, having jurisdiction to enforce collective bargaining agreements under § 301 of the Labor Management Relations Act, 29 U.S. C. § 185, could enjoin a strike where an effective collective bargaining agreement, containing a no-strike clause, con-

tractually binds the parties to arbitrate the grievance or dispute which precipitated the strike.

The Supreme Court, recognizing that its holding was a narrow one, adopted the following principles:

"A District Court entertaining an action under § 301 may not grant injunctive relief against concerted activity unless and until it decides that the case is one in which an injunction would be appropriate despite the Norris-LaGuardia Act. When a strike is sought to be enjoined because it is over a grievance which both parties are contractually bound to arbitrate, the District Court may issue no injunctive order until it first holds that the contract *does* have that effect; and the employer should be ordered to arbitrate, as a condition of his obtaining an injunction against the strike. Beyond this, the District Court must, of course consider whether issuance of an injunction would be warranted under ordinary principles of equity— whether breaches are occurring and will continue, or have been threatened and will be committed; whether they have caused or will cause irreparable injury to the employer; and whether the employer will suffer more from the denial of an injunction than will the union from its issuance." 370 U.S. at 228, 82 S.Ct. at 1346.

The defendant union, by way of motion to dismiss plaintiff's petition, asserts that in the instant situation the *Boys Market* case, supra is wholly inapplicable in light of its contention that no collective bargaining agreement exists between the parties. The parties apparently agree that an essential element of the doctrine of *Boys Market* is the existence of an effective collective bargaining agreement. Consequently, before this court can determine whether a *Boys Market* injunction is proper under the circumstances presented here, it must be determined whether or not there is a collective bargaining agreement in exis-

tence between the parties. This is the precise issue before this court.

Section 301 of the Labor Management Relations Act gives the district court jurisdiction to hear disputes involving labor contracts. Avco Corp. v. Aero Lodge 735, I.A.M., 390 U.S. 557, 88 S.Ct. 1235, 20 L.Ed.2d 126 (1968). The invocation of this statute presupposes the existence of a valid contract between the parties. However, under § 301, this court does have jurisdiction to determine whether or not there is a contract between the parties. Lear Siegler v. International Union, United Automobile, Aerospace and Agricultural Implement Workers of America (UAW), 287 F. Supp. 692 (W.D.Mich.1968).

The present controversy arises out of negotiations of Hribar Trucking and Local 43 for a new collective bargaining agreement and an ensuing strike by the Hribar employees. On March 25, 1974, the employer gave written notice to the union that it was terminating the 1971–1974 collective bargaining agreement between the parties effective May 31, 1974, on which date the 1971–1974 agreement was due to expire. The 1971–1974 agreement contained a no-strike clause and mandatory grievance arbitration.

After the 1971–1974 contract expired on May 31, 1974, the employer and union met on four separate occasions in June 1974 to negotiate a new agreement. From this point on there is a sharp conflict in the evidence. Hribar Trucking contends that on the 28th of June the parties came to an agreement on a new contract. The alleged "agreement" was not reduced to writing, but rather consisted of oral discussions between the bargaining representatives of the parties. The union disputes the employer's concept of what was agreed upon at the meeting and contends that the agreement reached, if any, on the 28th of June was merely "tentative." With respect to the content of the alleged agreement, the employer asserts that, in addition to wage, health, pension, and vaca-

tion changes, the parties agreed that all interstate hauling would be compensated on a percentage basis with the exception of interstate hauling of "rip-rap" Vulcan (a local stone quarry) products which would be paid up on an hourly basis. The union contends that the parties agreed that interstate hauling of all Vulcan products, not merely "rip-rap," would be compensated on an hourly rather than on a percentage basis. While the opposing understandings of the agreement may seem trivial at first blush, the difference results in approximately $70 to $90 per week per employee and, consequently, constitutes a substantial part of any collective bargaining agreement between these parties. The parties did agree that apart from the changes made all provisions of the prior 1971–1974 contract were to remain the same. This would include the no-strike clause and the grievance arbitration procedure.

At the meeting of the 28th of June the parties agreed that the employer would draft an amendment to the 1971–1974 contract incorporating the "agreement" which had been negotiated and would submit it to the union which would incorporate the amendment into the complete final contract for the signature of the parties.

At a meeting of the union members on July 1, 1974, Mr. Grimmer, the union bargaining representative, presented what he believed to be the agreement to the union members. An examination of the minutes of the union meeting reveals that the union bargaining representative believed that the agreement of the parties provided for hourly rather than percentage compensation for interstate hauling of all Vulcan products. The union members ratified the "agreement" by a 26 to 2 vote.

On July 23, 1974, Mr. Wheeler, the employer's bargaining representative, sent the written amendment to the contract to Mr. Grimmer, the union representative. In his letter Mr. Wheeler referred to the written document as "the

*proposed* amendment" to the labor contract of 1971–1974. Mr. Grimmer received Wheeler's letter on the 29th of July and wrote to Mr. Wheeler the following day informing him that the amendment submitted by the employer was not what the parties had agreed to on June 28, 1974.

Because of the conflicting "understandings" of the "agreement" by the parties, when the employees received their checks for July, the checks were $70 to $90 less per week than the employees had expected under their understanding of the terms of the agreement. Thereafter the employees went out on the strike which the employer now seeks to restrain.

■ A motion for temporary injunctive relief is addressed to the discretion of the court and is not a matter of right. Yakus v. United States, 321 U.S. 414, 420, 64 S.Ct. 660, 88 L.Ed. 834 (1944). A party seeking such relief carries a heavy burden of proof. In deciding whether to grant temporary injunctive relief pending a full hearing on the merits, this court must find that plaintiff has demonstrated a likelihood of success on the merits, Waier v. Schmidt, 316 F.Supp. 407 (E.D.Wis. 1970). A temporary restraining order should not issue in doubtful cases where substantial issues of fact persist.

■ In light of the conflicting evidence presented to the court, plaintiff has not sustained its burden of proof entitling it to injunctive relief. Not only has plaintiff failed to demonstrate a probability of its success on the merits, the evidence before this court indicates a probability that the defendant would ultimately be successful on the merits. The preliminary issue before the court, as noted above, is whether a collective bargaining agreement was created on June 28, 1974. The evidence, while conflicting, tends to indicate that there was no "meeting of the minds" on a substantial term of the contract dealing with the rate of compensation to be paid for interstate hauling of "Vulcan" products in the negotiations on June 28th. Consequently, the probabilities tend toward defendant's contention that no contract was formulated between the parties. Therefore, plaintiff's motion for a temporary restraining order is denied.

■ It is also to be noted that on the day of the strike, July 30, 1974, the union filed an unfair labor practice with the · National Labor Relations Board ("Board"), claiming that Hribar Trucking had violated its duty to bargain in good faith. The union asserts in its charge before the Board that the employer, by submitting a writing to the union out of compliance with the prior understanding, violated § 8(a)(5) of the National Labor Relations Act.

In acting upon the unfair labor practice charge the Board will be presented with the precise issue which is before this court. If the Board finds that a contract was created by the negotiations, the conduct of the employer could not be construed as a bad faith refusal to bargain. If on the other hand there was no contract created, then the employer's conduct might be an unfair labor practice. Thus the resolution of the unfair labor practice charge will in all probability involve a Board determination of the question of the existence or content of a collective bargaining agreement.

While this court has jurisdiction under § 301 of the Labor Management Relations Act to determine whether a contract exists, this court believes that it may be preferable to defer to the Board and its expertise in the area of labor negotiations and contract formulation.

It is therefore ordered that plaintiff's motion for a temporary restraining order be and it hereby is denied.