469 F.Supp. 14 (1977)
Karl KAHN, Jeffrey L. Henze, Karen Snelson, Adrian Rose, Donald J. Bessee, David Levine-McDonald, Natalia Shul, Rafael Espinoza, and Al Hart, in behalf of themselves and all other similarly situated members of Hotel and Restaurant Employees' and Bartenders International Union, Local Unions 44, 110, 41, 283 and 9, Plaintiffs,
v.
HOTEL AND RESTAURANT EMPLOYEES' AND BARTENDERS INTERNATIONAL UNION, Local Joint Board of Culinary Workers, Bartenders and Hotel Service Workers of San Francisco, Local Unions 44, 110, 41, 283 and 9, and the Executive Boards of each such union, Defendants.
No. C-75-1903-CBR.
United States District Court, N. D. California.
February 3, 1977.
*15 *16 Dan M. Siegel, Oakland, Cal., for plaintiffs.
Davis, Cowell & Bowe, Alan C. Davis, San Francisco, Cal., for defendants.

MEMORANDUM OF OPINION
RENFREW, District Judge.
This is a class action brought under the Labor Management Reporting and Disclosure Act ("LMRDA"), 29 U.S.C. §§ 401 et seq., challenging the merger of five San Francisco union locals into one. Plaintiffs contend that defendants violated the terms of both the international union's constitution and the bylaws and constitution of each of the local unions; that defendant officers failed to meet their fiduciary duties under § 501 of the LMRDA, 29 U.S.C. § 501 ("Title V"); and that defendants violated § 101(a)(1) and (2) of the LMRDA, 29 U.S.C. § 411 ("Title I"), by denying certain union members their rights to free speech and to an equal vote.
Prior to October 1, 1975, culinary employees in the San Francisco area were represented by five different locals of the Hotel and Restaurant Employees' and Bartenders' International Union ("International").[1] By letter dated April 8, 1975, International President Edward T. Hanley advised the executive officers of each San Francisco local that all five organizations would be merged into a single local union.[2] Defendants' Exhibit 3. After being informed of Hanley's letter, the membership of each local union voted to authorize their officers and executive board to enter into a merger agreement. Shortly thereafter, Anthony Anselmo, Administrative Assistant to the International President, began conducting discussions to arrive at a satisfactory merger plan. On May 27, 1975, the officers and executive board of each local agreed to a "Memorandum of Understanding" concerning the proposed merger. Defendants' Exhibit 5.
*17 On May 30, 1975, President Hanley signed a "Declaration and Order for Merger" ordering that, effective October 1, 1975, the five San Francisco locals would be merged into a single new local union to be known as Hotel and Restaurant Employees' and Bartenders' Union, Local 2, San Francisco, California ("Local 2"). Defendants' Exhibit 4. By letter dated June 18, 1975, the officers who attended the merger meetings with Anselmo notified the general membership that the merger would become effective the following October 1, that the next election of local officers would occur in April, 1978, and that no present officer or executive board member would lose his or her job due to the merger. Plaintiffs' Exhibit L.
On June 30, 1975, one Harold Treskunoff, not a named plaintiff in this action, filed a charge with the National Labor Relations Board ("NLRB") complaining that the decision to merge was illegal. Treskunoff alleged that union officers "restrained and coerced * * * [union members] by failing and refusing to permit * * * said employee-members to participate in" the decision to merge. Defendants' Exhibit 27. On September 2, 1975, the NLRB Regional Director, Natalie P. Allen, found that the merger had taken place in accordance with the International Constitution and refused to issue a complaint on Treskunoff's charge. Defendants' Exhibit 28.
Plaintiffs filed this action on September 11, 1975, seeking, inter alia, to enjoin (1) completion of the proposed merger without approval by the membership, (2) implementation of bylaws for Local 2 without a vote of the membership, (3) election of Local 2 officers before approval of the bylaws by a majority vote of the membership, and (4) acceptance of Local 2 officers elected or appointed prior to the entry of any order granting injunctive relief. Plaintiffs also ask the Court to compel the election of new Local 2 officers within six months of the effective date of the merger. On the day they filed suit, plaintiffs obtained a temporary restraining order enjoining the merger until September 15, 1975, when the matter could be heard by this Court. On September 15, this Court denied plaintiffs' application for a temporary restraining order and set a date for trial.
By letter dated October 9, 1975, Joseph Belardi, President of Local 2, sent a copy of proposed bylaws to members of Local 2 and informed them that a ratification vote would be held on October 24. Defendants' Exhibits 30 and 31. In a letter dated the next day, Belardi informed plaintiffs Bazan and Snelson that they could appoint election observers and that they could use the facilities of the union's printer to print and distribute election material to union members. Defendants' Exhibit 29. Belardi distributed a circular to the membership approximately one week before the election urging them to vote in favor of the bylaws. Plaintiffs' Exhibit R. Plaintiffs distributed no election materials to the general membership. The election was held on October 24 and the new bylaws were ratified by a vote of 3166 to 2449, with 440 challenged ballots. On December 30, 1975, plaintiffs filed a supplemental complaint asking the Court to void the October 24 election and order that a new vote be held.
Plaintiffs allege a myriad of violations in the formation of Local 2. Many of these claims are overlapping and redundant, but they can be broken down into three general categories: objections to the merger itself, objections to the ratification of the Local 2 bylaws, and objections to the appointment rather than the election of Local 2 officers.

I. THE MERGER

Plaintiffs argue that they were denied an equal vote in the merger decision, as guaranteed by § 101 of the LMRDA, 29 U.S.C. § 411(a)(1).[3] In fact, plaintiffs had no right to vote on that issue at all.
*18 International President Hanley ordered the merger in question on May 30, 1975, pursuant to Article V, Section 16 of the International Constitution.[4] Section 16 was adopted at the 1974 Special Convention for the explicit purpose of allowing the International President to order the merger of local unions without the consent of the membership. A similar provision giving the General Executive Board the power to merge the International with other unions was also passed at the same Convention. See Article IV, Section 11, International Constitution. Those who opposed the adoption of the new merger provisions did so
"on the basis that it takes away from the Local Unions the right to their own self-determinations as to how they want to merge with and whom they want to merge with." First Day Proceedings, 1974 Special Convention at 28 (remarks of Delegate Joseph J. Canale) [sic]. Plaintiffs' Exhibit A.
"You are taking our democratic rights away or not giving us a chance to vote." Id. (remarks of Delegate Joseph Massimino) [sic].
President Hanley argued that vesting the International President with the unilateral power to merge was necessary to the well-being of the union:
"Now, it is not my desire to be a god or to have total authority, but in the event that I have to act in that fashion, by God, I want the authority to do it!" Id. at 29 (remarks of President Hanley).
Plaintiffs concede the validity of Article V, Section 16, but argue that it was exercised in an "unreasonable and discriminatory manner." Supplemental Memorandum in Opposition to Motion for Summary Judgment at 3 (filed June 21, 1976). Plaintiffs' arguments, however, actually boil down to the contention that union members were denied an equal opportunity to vote in May, 1975, on whether to authorize "their officers to attend meetings to determine the terms and conditions of the merger." Id. Without reaching the merits of plaintiffs' arguments,[5] the fact remains that the decision to merge was committed solely to the discretion of President Hanley and the General Executive Board. President Hanley sought the advice and consent of the officers of the five locals for obvious and practical reasons. Their consultation was, however, only consultation. Whether there were irregularities in the May voting has no bearing on the validity of President Hanley's merger order of May 30, 1975. The guarantee of an equal right to vote contained in § 101 does not give union members the right to vote on every union decision. Lear Siegler, Inc. v. International U., United A., A. & A. I. Wkrs., 287 F.Supp. 692, 697 (W.D.Mich.1968); Cleveland Orch. Com. v. Cleveland Federation, Etc., 193 F.Supp. 647, 650 (N.D.Ohio 1961), aff'd, 303 F.2d 229 (6 Cir. 1962).
Plaintiffs also contend that the merger violated § 501 of the LMRDA, 29 U.S.C. § 501, because union officials did not allow a meaningful vote on the question of merging the unions and did not reveal their financial interest in being retained as officers in the merged local. First, as discussed supra, there was no vote on the merger. Second, since President Hanley and the General Executive Board could and did unilaterally order the merger, any failure to *19 divulge such information would not affect the validity of the merger itself. See Blanchard v. Johnson, 388 F.Supp. 208, 214 (N.D.Ohio 1975), modified, 532 F.2d 1074 (6 Cir. 1976) (§ 501 duty requires full disclosure on issues that "the rank and file, must decide"). Moreover, the interest of the local union officers was divulged to the membership. In a letter to all union members, dated June 18, 1975, and signed by officers of each local union, the rank and file were informed:
"As we enter into the merger no present officers will stand to lose their positions, including all Executive Board Members as well as all members." Plaintiffs' Exhibit L.
Plaintiffs also argue that defendants had a fiduciary duty to divulge that certain officers would receive pay raises in their new jobs. After reviewing the salaries received by the local officials before and after the merger, the Court finds that no breach of a § 501 fiduciary duty has occurred. Any pay raises that occurred are minimal and can be explained by differing duties in the new local.
Congress did not intend the LMRDA to engender court interference with the internal management of union affairs. See S.Rep.No.187, 86th Cong., 1st Sess. (1959), 2 U.S.Code, Cong. & Admin. News, pp. 2318, 2323 (1959). As the Court of Appeals for the Second Circuit observed in Gurton v. Arons, 339 F.2d 371, 375 (2 Cir. 1964), a case involving § 501:
"The provisions of the L.M.R.D.A. were not intended by Congress to constitute an invitation to the courts to intervene at will in the internal affairs of unions. Courts have no special expertise in the operation of unions which would justify a broad power to interfere. The internal operations of unions are to be left to the officials chosen by the members to manage those operations except in the very limited instances expressly provided by the Act."
Section 501 applies only to union officials' actions that are not authorized by the unions' constitution or bylaws. United Mine Workers of America v. Boyle, 78 CCH Lab. Cas. ¶ 11,183 at 20,051 (D.D.C.1975); Terrazas v. Fitzsimmons, 76 CCH Lab.Cas. ¶ 10,750 at 18,553 (C.D.Cal.1974). And courts give great deference to the judgment of union officials in such matters:
"Courts are reluctant to substitute their judgment for that of union officials in the interpretation of the union's constitution, and will interfere only where the official's interpretation is not fair or reasonable." Vestal v. Hoffa, 451 F.2d 706, 709 (6 Cir. 1971), cert. denied, 406 U.S. 934, 92 S.Ct. 1768, 32 L.Ed.2d 135 (1972) (citations omitted).
Article V, Section 16 empowers the International President to merge local unions "under such terms and conditions and subject to such qualifications as [he] may determine, taking into consideration" such factors as "appear appropriate." Plaintiffs have failed to present any evidence suggesting that the salary increases given to Local 2 officers were unreasonable or inappropriate. Thus, the Court can find no violation of § 501.

II. THE BYLAWS ELECTION

The membership of Local 2 ratified a set of bylaws in a supervised election held on October 24, 1975. Plaintiffs argue that the election should be voided for a variety of reasons, but primarily because it was held in violation of § 101 of the LMRDA. Plaintiffs contend that defendants denied union members an equal right to vote by failing to inform them properly of the issue before them.
As discussed supra, one of Congress's primary considerations in drafting the LMRDA was to avoid unnecessary judicial interference in union elections. As a result, "Congress made suit by the Secretary [of Labor] the exclusive post-election remedy" for violations of Title IV of the Act.[6]Trbovich v. Mine Workers, 404 U.S. *20 528, 531-532, 92 S.Ct. 630, 633, 30 L.Ed.2d 686 (1972). Accord, Davis v. Turner, 395 F.2d 671, 672 (9 Cir.), cert. denied, 393 U.S. 987, 89 S.Ct. 467, 21 L.Ed.2d 449 (1968). By directing litigation through the Secretary, Congress hoped "to protect unions from frivolous litigation and unnecessary judicial interference with their elections * * *." 404 U.S. at 532, 92 S.Ct. at 633. Because of this clear congressional intent, courts are quite reluctant to allow plaintiffs to bypass administrative remedies by framing their claims in terms of Title I violations. See, e. g., Calhoon v. Harvey, 379 U.S. 134, 139-141, 85 S.Ct. 292, 13 L.Ed.2d 190 (1964); Davis v. Turner, supra, 395 F.2d at 672; Gurton v. Arons, supra, 339 F.2d at 374-375; Fennelly v. Local 971, 400 F.Supp. 375 (D.Mass.1975). As the Supreme Court emphasized in Calhoon v. Harvey, supra, 379 U.S. at 139, 85 S.Ct. at 295:
"Plainly, [§ 101] is no more than a command that members and classes of members shall not be discriminated against in their right to nominate and vote."
Plaintiffs seek to invoke § 101 in this case on the ground that defendants' failure to call a special meeting to discuss the proposed bylaws and failure to send union members a copy of the proposed bylaws more than ten days before the election,[7] combined to deny union members their right to an informed vote.[8] Plaintiffs rely upon Blanchard v. Johnson, 388 F.Supp. 208 (N.D.Ohio 1975), modified, 532 F.2d 1074 (6 Cir. 1976), and Sheldon v. O'Callaghan, 497 F.2d 1276 (2 Cir.), cert. denied, 419 U.S. 1090, 95 S.Ct. 681, 42 L.Ed.2d 682 (1974), as precedent for their arguments, but both cases turned on very different facts.
In Blanchard v. Johnson, supra, union members were forced to vote on an affiliation agreement without full disclosure of all relevant information and under misleading circumstances:
"The letter attached to the ballot purported to represent the entire agreement between Local 47 and the ILA [International Longshoremen's Association], but it contained no mention of the previously discussed oral agreements, of any per capita tax, or of any constitutional provision of the ILA." 388 F.Supp. at 212.
The district court concluded that "any right to vote which is guaranteed by [29 U.S.C.] § 411 must be the right to a meaningful vote" and that "[a] meaningful vote is not a deliberately uninformed vote, because as such there is no choice, no selection, but merely a shot in the dark." 388 F.Supp. at 213-214. The Court of Appeals for the Sixth Circuit affirmed the district court on this issue, but cautioned that a court "is not unfettered in its determination of what constitutes * * * a `meaningful vote.'" 532 F.2d 1074, 1078. The Court of Appeals emphasized that the judiciary should exercise *21 a "sound reluctance" to interfere with union affairs. 532 F.2d at 1078.
Sheldon v. O'Callaghan, supra, is also quite distinguishable from the instant case. In that case union officials deliberately distorted campaign information in a referendum on a new constitution and denied opponents a chance to mail information to union members. 497 F.2d at 1281-1282. In the case at bar, defendants neither denied plaintiffs an opportunity to communicate their views,[9] nor relegated union members' votes to "shots in the dark." Defendants gave plaintiffs an opportunity to mail campaign literature to each union member, mailed a notice of the referendum and copy of the bylaws to each union member, and held an open meeting to discuss the bylaws. This is clearly a case in which the Court should exercise its "sound reluctance" to intervene in internal union affairs. See Blanchard v. Johnson, supra, 532 F.2d at 1078.
Plaintiffs also seek to frame their "lack of informed vote" argument in terms of a Title V breach of fiduciary obligations. For the same reasons discussed above, plaintiffs fail to make their case.
Plaintiffs further contend that, apart from the LMRDA, the bylaws election was not held in accordance with the bylaws of the five pre-existing local unions because the officers did not call a special meeting to discuss the proposed bylaws and did not give members sufficient advance notice of the election. Plaintiffs also assert that defendants violated both the pre-existing local constitutions and the International Constitution by not allowing amendment to the bylaws. With the dismissal of the federal law claims, this Court will also dismiss plaintiffs' state breach of contract claims. See United Mine Workers v. Gibbs, 383 U.S. 715, 726, 86 S.Ct. 1130, 16 L.Ed.2d 218 (1966); Walling v. Beverly Enterprises, 476 F.2d 393, 398 (9 Cir. 1973).
Even if the Court were to consider these "breach of contract" claims, plaintiffs' arguments are without merit. Local 2 is not bound to call special meetings in conformance with bylaw provisions of the pre-merger local unions. A merged union can hardly be held to the varied and possibly conflicting provisions in the bylaws of its predecessors. Moreover, Local 2 did conduct an open discussion of the proposed bylaws at its regular meeting on October 21, 1975. See Defendants' Exhibit 33. On October 14, 1975, union officials also sent the membership copies of the proposed bylaws along with notice of the election and the October 21 meeting. Similarly, plaintiffs' allegation that the officers would not allow members to amend the bylaws is unfounded. While the October 24 referendum consisted of a yes/no vote, Local 2 members have amended the bylaws since October 24, 1975. See Defendants' Exhibit 36 at p. 2 (amendments passed); Defendants' Exhibit 37 at p. 2 (amendment proposed for future vote). A union is under no obligation to submit each proposed bylaw to a seriatim vote. Sheldon v. O'Callaghan, supra, 497 F.2d at 1280.

III. THE ELECTION OF OFFICERS

Plaintiffs contend that defendants' decision to appoint Local 2 officers and not to have an election until April 1978 violated § 101(a) and the pre-existing local union bylaws. As discussed above, Local 2 is a new and independent local union and is not bound by the bylaws of the pre-merger locals.
Section 101 guarantees union members an equal right to nominate candidates and vote in elections, but it makes that right "subject to reasonable rules and regulations in such organization's constitution and bylaws." 29 U.S.C. § 411(a)(1). President Hanley appointed the new officers of Local 2, and the membership approved bylaws which provide that the first nominations and election will take place in March and April of 1978. Article V, Section 16 of the International Constitution gives President Hanley authority to order the merger of *22 locals "under such terms and conditions and subject to such qualifications as [he] may determine." The election will be held within 2½ years of the formation of Local 2 and satisfies the 3-year requirement of Article X, Section 10 of the International Constitution and Article VI, Section 1(a) of the Local 2 Constitution. Plaintiffs do not explain how this decision, approved by the members themselves, discriminates against members or a class of members. See Calhoon v. Harvey, supra, 379 U.S. at 139, 85 S.Ct. 292.
Plaintiffs are really asserting a Title IV claim, 29 U.S.C. § 481, over which this Court has no jurisdiction. Title IV governs the election of local officers, and 29 U.S.C. §§ 482 and 483 make clear that the administrative remedies provided therein "shall be exclusive." In any event, § 481 provides that local labor organizations must elect officers every three years, and § 483 provides that if elections are held within that three-year limit,
"[n]o labor organization shall be required by law to conduct elections of officers with greater frequency or in a different form or manner than is required by its own constitution or bylaws * * *."
29 C.F.R. § 452.14 provides:
"The initial selection of officers by newly formed or merged labor organizations is not subject to the requirements of Title IV. [Footnote omitted.] Such labor organizations may have temporary or provisional officers serve until a regular election subject to the Act can be scheduled. An election under all the safeguards prescribed in these regulations must be held within a reasonable period after the organization begins to function."
Plaintiffs may argue to the Secretary of Labor that 2½ years before an election is unreasonable. They have given this Court no reason to so believe.

IV. ORDER

The above Memorandum of Opinion constitutes the Court's findings of fact and conclusions of law as required by Rule 52(a) of the Federal Rules of Civil Procedure. Accordingly,
IT IS HEREBY ORDERED that defendants' motion for summary judgment is granted.
IT IS HEREBY FURTHER ORDERED that counsel for defendants shall promptly prepare an appropriate form of judgment, obtain approval of counsel for plaintiffs as to form, and submit it to the Court for execution. The parties shall bear their respective costs.
NOTES
[1] The five local unions were Dining Room Employees, Local 9; Bartenders, Local 41; Cooks, Pastry Cooks and Assistants, Local 44; Miscellaneous Culinary Employees, Local 110; and Hotel, Motel, Club and Service Workers, Local 283.
[2] In the letter, President Hanley stated his reasons for ordering the merger:

"There are several reasons why a merger in this instance is desirable, many of which I have discussed in the Catering Industry Employee. Under the present circumstances, there is costly duplication of office facilities and expenses, staff effort, and other related expenses. Experience to date has proven that not only are overall operating expenses reduced, but such mergers enable the new local to better serve the present membership and to more effectively organize the unorganized." Defendants' Exhibit 3 at p. 1.
[3] 29 U.S.C. § 411(a)(1) provides:

"Every member of a labor organization shall have equal rights and privileges within such organization to nominate candidates, to vote in elections or referendums of the labor organization, to attend membership meetings, and to participate in the deliberations and voting upon the business of such meetings, subject to reasonable rules and regulations in such organization's constitution and bylaws."
[4] Article V, Section 16 of the Hotel and Restaurant Employees' and Bartenders' International Union Constitution provides:

"The General President with the approval of the General Executive Board, shall have the power to merge local unions and other subordinate bodies under such terms and conditions and subject to such qualifications as the General President may determine, taking into consideration such circumstances as financial conditions, jurisdiction, location and such other factors as appear appropriate in connection with the local unions and other subordinate bodies involved."
[5] It is worth noting, however, that the merger has been approved by both Natalie P. Allen, NLRB Regional Director, and Carl Rolnick, Director of the Office of Labor-Management Standards Enforcement. See Defendants' Exhibit 28 and Letter of September 23, 1976, from Carl Rolnick (filed December 10, 1976).
[6] Title IV of the LMRDA, codified at 29 U.S.C. §§ 481-483, governs the terms of office and election procedures to be followed in labor organizations.
[7] The 15-day notice requirement contained in 29 U.S.C. § 481(e) applies to the election of officers. Congress did not provide for a set period of notice in all union referenda. In this instance "reasonable notice"  such as required by 29 U.S.C. § 411(a)(3)(A) for votes concerning dues increases  is sufficient. See Local No. 2, Int. Bro. of Tel. Wkrs. v. International Bro. of T.W., 362 F.2d 891, 895 (1 Cir.), cert. denied, 385 U.S. 947, 87 S.Ct. 321, 17 L.Ed.2d 226 (1966).
[8] Plaintiffs also allege that defendants' failure to make copies of the proposed bylaws available in Chinese and Spanish denied union members their right to an equal vote as guaranteed by § 101. Plaintiffs do not state in their complaint, however, that any named plaintiff was actually injured by this omission. Therefore, plaintiffs do not have standing to assert the claim. As the Supreme Court emphasized in Warth v. Seldin, 422 U.S. 490, 502, 95 S.Ct. 2197, 2207, 45 L.Ed.2d 343 (1975):

"[Plaintiffs] must allege and show that they personally have been injured, not that injury has been suffered by other, unidentified members of the class to which they belong and which they purport to represent. Unless these petitioners can thus demonstrate the requisite case or controversy between themselves personally and respondents, `none may seek relief on behalf of himself or any other member of the class.' O'Shea v. Littleton, 414 U.S. 488, 494, 94 S.Ct. 669, 38 L.Ed.2d 674 (1974)."
Moreover, plaintiffs have not shown that any union member was prejudiced in this case, nor have they cited any authority for requiring a union to print all election materials in several languages.
[9] Plaintiffs have presented no credible evidence that defendants denied union members their § 101 right to free speech at any time during the consideration of the merger or new bylaws.